UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                        Plaintiff,

                                                SENTENCING MEMORANDUM
   -against-                                  25-CR-25 (MAD)

NIESHA GOODWIN,

                        Defendant.

## DEFENDANT NIESHA GOODWIN'S SENTENCING MEMORANDUM

**I.**    **Introduction**

Niesha Goodwin, age 37, was born on June 9, 1987, to the nonmarital union of Kevin Coleman and Arosemond Goodwin. Ms. Goodwin was born and raised in Albany, New York, and has resided in Albany for her entire life. Ms. Goodwin has no children, but is in a relationship with Niya Tucker and Ms. Tucker does have three children (ages 22, 19, and 12). Ms. Tucker's children reside with Ms. Goodwin (and Ms. Tucker) and Ms. Goodwin has an excellent relationship with all three (3) of the children.

At age eighteen (18), Ms. Goodwin was the victim of a shooting in Albany. Three bullets hit her, in her chest, leg and arm. Ms. Goodwin was hospitalized initially for a week, but due to complications caused by the shooting, she was later hospitalized for over four months. Upon Ms. Goodwin's release from the hospital, Ms. Goodwin suffered an onset of medical conditions that remain with her today.

In 2018, Ms. Goodwin was again granted Title 16 disability benefits for Depressive, Anxiety and Panic Disorders, PTSD, and Agoraphobia (initial benefits began in 2010). Ms. Goodwin's symptoms include hypervigilance, diminished sleep, isolation, and social withdrawal. Ms. Goodwin has continued trauma associated with the gun

violence and has a constant feeling of being overwhelmed. Ms. Goodwin has difficulty leaving the house for fear of something else happening. She has a constant depressed mood with anxious affect.

Ms. Goodwin was arrested on some of the charges (the gun and the drugs) on November 30, 2022. Ms. Goodwin was released on bail and was directed to report to the Albany County Probation Department. Ms. Goodwin was supervised by the Albany County Probation Department from November 30, 2022, until her plea of guilty in the Northern District of New York, on February 12, 2025. At that time, Ms. Goodwin was released to the United States Probation Department. To date, Ms. Goodwin has been continuously supervised for the crime contained in the plea agreement since November 30, 2022 (total of over 2 ½ years). There have been no violations and no new criminal conduct.

## II.   Plea Agreement

On or about February 12, 2025, Ms. Goodwin entered a plea of guilty to Mail Fraud, in violation of 18 U.S.C. § 1341, Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1), Possession of a Firearm by a Prohibited Person (Felon), in violation of section 18 U.S.C. §§ 922(g)(1) and 924(a)(8), as well as Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

Ms. Goodwin does not dispute the facts describing her conduct in this case. Ms. Goodwin defrauded the New York State Department of Labor and obtained money and property from the New York State Department of Labor by means of materially false and fraudulent pretenses. Ms. Goodwin submitted false and fraudulent applications for unemployment insurance benefits and she benefitted from the same. Ms. Goodwin possessed a firearm, as well as cocaine.

**III.     Sentencing Recommendation**

    **A.     Guidelines Calculation**

The Presentence Report Guidelines calculation results in a recommendation that defendant be at a Level 22, Criminal History Category III, with a guideline imprisonment range of 75 to 87 months.

    **B.     Recommended Restitution**

Restitution is being recommended in the amount of $151,783.00.

    **C.     Downward Departure Motions by Government**

The Government has moved for a two-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and for a one-level downward adjustment for timely notification of his intention to plea guilty pursuant to U.S.S.G. § 3 E1.1(b).

    **D.     Departure for Extraordinary Circumstances Not Adequately Taken into Account by Guidelines**

Ms. Goodwin is disabled and was granted Titled 16 disability benefits for Depressive, Anxiety and Panic Disorders, PTSD, and Agoraphobia. She has been "disabled" since 2010, and continues to engage in mental health therapy and treatment. Ms. Goodwin's symptoms include hypervigilance, diminished sleep, isolation, and social withdrawal. She continues to suffer from the effects of gun violence and feeling overwhelmed. She has difficulty leaving the house regularly for fear of something else happening. She often displays dysphoric and depressed mood with anxious affect. In 2023, Ms. Goodwin had a continuing disability review and she was again granted disability benefits. It was noted that her cognitive function appears below average and that she needs help with "everyday stuff".

Medical evidence from Albany County Department of Mental Health indicates ongoing treatment for PTSD, panic disorder, and agoraphobia. Her sleep disturbances

come and go, she continues to have panic attacks, and her exams are notable for anxious mood, and there are reports that "she is guarded". Ms. Goodwin also attended a psychiatric consultative exam on June 8, 2023, and again reported sleep difficulties, symptoms of depression and anxiety, panic attacks, trauma exposure with symptoms, short- and long-term memory and concentration problems. She will not take public transportation due to mental health issues and does not manage money well.

Ms. Goodwin still reports that she has panic attacks, still can't function outside, and cannot sleep. Her adult function report indicates that she stays in the house all day and she is afraid of crowds. She can dress, bathe and groom herself with some limitations. She can prepare simple meals, do light housework, and shop, but does not manage money or drive independently. She can follow written instructions if she keeps looking at them and forgets spoken instructions almost instantly. Based upon all of Ms. Goodwin's mental health issues, as well as her phobias and limitations, she continues to be fully disabled.

Ms. Goodwin is requesting a downward departure because she has a significantly reduced mental capacity (and such condition has been continuous since 2010) and because the significantly reduced mental capacity contributed substantially to the commission of the offenses. U.S.S.G. 5K2.13

E.   **Non-Guidelines Sentence – Alternative to § 5K2.0**

1.   **Law**

If the Court does not grant our downward departure motion, we move for a *Booker*, non-guidelines sentence of twenty-four (24) months of incarceration, to be followed by three (3) years of supervised release. The Second Circuit in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005) specifically authorized the district court to impose a non-

guidelines sentence, even in cases where a sentencing guidelines downward departure would not ordinarily be warranted. The court stated as follows:

> "…the sentencing judge should decide, after considering all the other factors set forth in section 3553 (a), whether (i) to impose the sentence that would have been imposed under the Guidelines, *i.e.*, a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence." *Id.* at 113.

In *United States v. Jones*, 460 F.3d 191 (2d Cir. 2006), the district court imposed a non-guidelines sentence of 15 months rather than the guidelines sentence of 30-37 months. The Second Circuit in affirming the sentence rejected the Government's argument that the district court had erroneously relied upon factors such as the defendant's "…education, emotional condition, favorable employment record, family support, and good record on state probation [because] the Sentencing Commission has concluded [such factors] are 'ordinarily' not relevant 'in determining whether a departure is warranted.'" *Id.* at 194. The Second Circuit responded to this argument as follows:

> "By citing the Guidelines' departure standards, however, the Government fails to appreciate that Jones's post-*Booker* sentence is not a Guidelines departure; it is a non-Guidelines sentence. See *Crosby*, 397 F.3d at 111 n. 9. With the entire Guidelines scheme rendered advisory by the Supreme Court's decision in *Booker*, the Guidelines limitations on the use of factors to permit departures are no more binding on sentencing judges than the calculated Guidelines ranges themselves." *Id.*

The *Jones* court went on to hold, as follows:

> "*Although the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553 (a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances.* That is the historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness…We decline to impose a requirement for such specific articulation of the exact number of months of an imposed sentence. Selection of an appropriate

>amount of punishment inevitably involves some degree of subjectivity that often cannot be precisely explained …*Judge Larimer's reasons for the non-Guidelines sentence he imposed, even if not 'ordinarily' grounds for a pre-Booker guidelines departure and even though influenced in part by his subjective assessment of the Defendant, are adequate to support his conclusions that a post-Booker non-Guidelines sentence was appropriate for Eric Jones, and they suffice to satisfy the statutory requirement to state 'the reasons for [the court's] imposition of the particular sentence.'"* (emphasis added).
>*Id.* at 195.

*See also*, *United States v. Castillo*, 460 F.3d 337, 356 (2d Cir. 2006) (reaffirming *Jones'* holding that "a district court may consider 'the judge's own sense of what is a fair and just sentence under all the circumstances.'")

After considering all the factors that the Court must consider, it is respectfully submitted that a sentence of twenty-four (24) months would satisfy all the factors under §§ 3553(a)(1)-(7).  Ms. Goodwin is asking that the Court impose a sentence of twenty-four (24) months because it is a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of 18 U.S.C.A. § 3553.  However, before getting to paragraph 2 of this subsection, the Court shall also consider (1) the nature and circumstances of the offense and the history and characteristics of Ms. Goodwin.

### 2. Section 3553 (a) (2) Factors

An analysis of all the factors the court must consider compels the conclusion that a sentence of twenty-four (24) months, to be followed by three (3) years of supervised release, would satisfy all the factors under §§3553 (a)(1)- (a)(3) and (a)(6)-(a)(7).  That is, this case is appropriate for a non-guidelines sentence in view of Ms. Goodwin's (1)

A non-guidelines sentence of twenty-four (24) months, to be followed by three (3) years of supervised release, is entirely reasonable under all these circumstances.

We ask the court to consider our analysis of the following four sentencing factors as they apply to this case. In so doing, we believe the court will conclude that a sentence of twenty-four (24) months, to be followed by three (3) years of supervised release, will be "sufficient, but not greater than necessary" to comply with the four purposes of sentencing under §3553 (a) (2).

    **a. (a)(2)(A) -   The Seriousness of the Offense, Respect for the Law and Just Punishment**

Ms. Goodwin admits that she has been convicted of serious crimes, but there is nothing to suggest that the imposition of a sentence of twenty-four (24) months, to be followed by three (3) years of supervised release, will detract from the seriousness of the offense.

    **b. (a)(2)(B) - General Deterrence**

The felony convictions and a sentence of twenty-four months is severe punishment and will promote deterrence of future criminal conduct for the type of offenses charged herein. A felony conviction, as well as twenty-four (24) months, to be followed by three (3) years of supervised release, is devastating punishment in and of itself for most otherwise law-abiding individuals.

    **c. (a)(2)(C) - Protection of the Public**

It is respectfully suggested that a lengthy prison sentence is not necessary to protect the public from Ms. Goodwin. Ms. Goodwin has been released to probation supervision since November 2022 and has demonstrated that she is able to live a law-abiding life.

    **d. (a)(2)(D) – Need for Education, Training, Medical Care, et al.**

This factor is not relevant to this case.

**F.     CONCLUSION**

The conduct in Counts One and Two is from 2020 -2021 and the conduct in Counts Three and Four is from 2022. Ms. Goodwin was originally arrested in the City of Albany in November of 2022, and she has remained under the supervision of probation since that time. That is, Ms. Goodwin was supervised by the Albany County Probation Department from November 2022 through February 2025. In February 2025, Ms. Goodwin began her supervision with the United States Probation Department. Ms. Goodwin has not committed any new criminal conduct and has otherwise been compliant with her conditions.

Review of Ms. Goodwin's criminal history reveals that she became involved with drugs at a young age and, as a result, Ms. Goodwin became involved with the wrong people. Ms. Goodwin abused substances for much of her early life. Her severe mental health issues, mixed with this substance abuse, often led to very bad choices. Ms. Goodwin is a follower and those around her "mark her" as someone who follow blindly down whatever path *they* choose. Ms. Goodwin has been engaging in mental health treatment since 2010, and she continues to address the issues that somehow continue to shape her life.

This office has been involved with Ms. Goodwin since 2022, and has known Ms. Goodwin for several years before this recent arrest. It is hard to fathom Ms. Goodwin devising any scheme and it is harder for this office to believe that she is the only one who benefitted from the scheme. But, there is no question that she was a part of it and that committed the crimes as charged in the plea agreement. The question then becomes, what should the sentence be? It is respectfully submitted that Ms. Goodwin should be sentenced to twenty-four (24) months, to be followed by three (3) years of supervised release. This is

a sentence that is "sufficient, but not greater than necessary" to fulfill all the statutory requirements of sentencing. A lengthy sentence of incarceration would negatively impact the improvements that Ms. Goodwin has made in her life and would set back her mental health treatment.

Dated: June 5, 2025

Respectfully submitted,

s/     *Danielle Neroni*
Danielle Neroni
Bar Roll No.: 513736
*Attorney for Defendant*
668 Madison Avenue
Albany, New York 12208
(518) 366-6933 / (518) 453-0173